for argument is 157069 Sneed v. McDonald. Mr. Herbert, just hold on a minute, make sure everybody's ready. May it please the court, you are here before this court for a second time again to have errors made by the Court of Veterans Claims, or the Veterans Court, legal errors overturned. So it seems to me that looking at your case from the best case perspective, what happened when Eagle was asked to look at this is that she said, I'll look at this, I'll give you an evaluation of your case, and then I'll decide whether to represent you. And that the argument would be that having agreed to evaluate the case, that created an attorney-client relationship under California law. Let's assume that, hypothetically, that that's correct. Why don't you have a problem that Ms. Sneed didn't exercise due diligence during the period that Eagle had the case? In other words, this wasn't a situation in which Eagle had said, I'll file the thing, I'll take care of it. And if she didn't, that would be abandonment, which would count as equitable tolling. This was a situation in which she said, I might or might not take your case depending on my evaluation. And so as the time ran and it came close to the deadline, why didn't Ms. Sneed have an obligation to say what's going on? Why didn't due diligence require that she sort of check into it? I think the answer to your question, Judge Dyke, is twofold. First, the Veterans Court, for the purpose of deciding that withholding issue, accepted as true the facts that are contained on A6. And in those facts, they accepted as true that Ms. Sneed had an initial sending of files eight days after she obtained the Board's decision. And then subsequent to that, there was further communications with Ms. Eagle's office, and there was a request for information and to send back. So that's the first point, is that it wasn't just, she had additional activities going back and forth during that 100-day period. I think that's responsive to my question, because it doesn't show diligence. She didn't say to Eagle, are you going to file this? Are you taking care of it? Have you decided to represent me? She didn't do those things. Understood. And I think the second part that I was going to get to is, she was in a way foreclosed, the facts that we have in a way foreclosed us from knowing whether or not she was going to be diligent. Because I think if you have an attorney that's, if you believe an attorney is representing you because you've had it back and forth with them several times, sent them additional files in response to you, it's not unreasonable to wait until the day before the deadline to call the attorney and say, hey, I just want to check in with you. Are you going to be filing the thing on time for me? The problem here is that she received Ms. Eagle's letter on the day before the deadline. Why is it reasonable to wait until the last minute when Eagle never told her that she would represent her? Your Honor's correct that Eagle never told her that she would represent her. But there was an undisputed fact that there was an initial sending of materials and then subsequent requests for more materials and more communications. And then the fact that she held onto the file for 110 days over three months, I think that in light of those initial communications and the fact that we know from based on the letter that there was an analysis going on, she was reviewing the file, she was conducting the analysis. I think in light of that, it was reasonable for her to wait until the day before to potentially try and call. As I said, the issue is here that the letter prevented us from knowing whether she was going to do that or not. Are you familiar, the Supreme Court issued a recent opinion just a couple weeks ago, the Mamoni tribe case? Yes, Your Honor. Okay. Well, it seems to me one of the takeaways from that case is certainly that the court distinguished between what was in the control of the claimant versus outside of the control of the claimant. And it strikes me that under the circumstances that Judge Dyke outlined, she still had a considerable amount of control. I mean, she hadn't gotten confirmation that the appeal would be filed or that Ms. Eagle would accept her as a client. And again, why didn't, I think Judge Dyke was saying, if it's a court distinction, it has to be really outside of her control. How is this outside of her control? When you have, the question really here is was there an attorney-client relationship? And under California law, an attorney-client relationship will exist if a party seeks legal advice from a professional, in the professional realm, from an attorney and that attorney provides advice. Yeah, but I'm assuming that. I'm assuming that there was an attorney-client relationship insofar as she said she'd evaluate her case. But still, it seems to me that there's the question of diligence of whether she did, was within her control and whether she should have checked up to see if Eagle actually was going to represent her. So the case that Chief Judge Post mentions, the Menoy tribe case, makes clear that the exceptional circumstances and the diligence elements are two separate prongs. What we have here is that the veterans court said that there was an exceptional circumstances because of the lack of an attorney-client relationship. So you want to send it back down to them to look and see if there's a diligence? Yeah, Judge Wallach is exactly right. The issue here is that the period that they analyzed, the veterans court analyzed diligence under, was the improper period of time under this court's Checco decision. That case makes very clear that the period of time that you have to analyze diligence under is the period during which there was exceptional circumstances. And that case also makes clear that that exceptional circumstances period exists during the time period for the deadline. So that's 120 days. If you look at the veteran courts... So your position isn't that the clock starts to run anew on August 2nd or whenever it was that you... No, our position is that that letter clearly establishes that there was an attorney-client relationship. And the contents of that letter also show that it existed prior to that. That letter does not establish that the attorney-client relationship began at that time. It actually evidences work that she was doing prior. So the attorney-client relationship existed prior to that letter. And our position is that for a period prior to receiving that letter, the period should be told. Our opinion is we think that in these circumstances, for at least 30 days, a reasonable attorney in that period would have told a client that, I'm not going to be representing you. Here's your materials back. You need to file the deadline. So our position is that for that period of time, roughly 30 days prior to the deadline, the diligence analysis needs to be conducted during that period of time. The only diligence analysis the veterans court actually conducted was between when she missed the deadline to when she finally filed it on September 1st, 2011. And that, if you look at that analysis by the veterans court, is on 89. Are you familiar with Perkins? Yes, I am. And that's the California case from 1900 that established this rule about if you approach an attorney and they give you advice, it's a prima facie attorney-client relationship. There's a line of progeny, recent line of progeny in the district courts, which seems to support your position, which the government hasn't addressed. If we take, as Judge Dyke in his hypothetical did, we take as a given that the attorney-client relationship did exist under California law, then must we remand it to the veterans court? On the diligence question. You're supposed to say yes. Yes, yes. I think that that is correct, and I don't think it would be correct in all cases. I think because here, because the diligence was analyzed during the wrong period of time, that it would need to be remanded. I just didn't want to say in all cases that it would have to be, but that's here. I understand, although I'm not at all convinced that it will change the result of the analysis, but I don't see the analysis. Well, I think that if it gets remanded, the attorney that represents below will most likely have another opportunity to present evidence about what was going on during once the period has been defined, and they can come forward with additional evidence about what was going on, and maybe try and establish a little more concrete details on when these additional points of communication occurred. That's fair. Now, her discussions that took place after she received the letter from Ms. Eagle, I guess there's some chart. She says she contacted 14 attorneys, but there were a smaller number which she spoke to or what she did. Is it your view that there was an attorney-client relationship established in each of those circumstances? To answer your question, Chief Judge, I don't know enough about those communications and what was said. If you approach an attorney and just say, I want you to represent me, here's my stuff, and the attorney comes back at that moment or a week later and says to you, I'm not representing you, that's an attorney-client relationship. Wouldn't it be established under the Perkins case? So your basis for attorney-client relationship is purely the timing on which she sat on it, not the fact that she gave her advice at the end, because some of these attorneys apparently gave her the same sort of advice. Like, I can't take your case because I think it doesn't have merit, et cetera, right? It's my position, Chief Judge Prost, that if you give advice under the California law, under California law, there is an attorney-client relationship that exists. So if she saw these lawyers, even if they looked at her file for one day and they called her up and they said, I'm not taking your case because here's my take on your case. I mean, Ms. Eagle just had a paragraph, so they say essentially what she said. There's no merit, da-da-da. So your view would be that there's an attorney-client relationship established in those circumstances as well? And if so, is there abandonment because they declined to take her case? No, Your Honor, and that's because it's after the period where you can have exceptional circumstances. The exceptional circumstances period exists in the 120-day deadline. So the fact that these contacts after the fact wouldn't be the basis for attorney abandonment for that reason. But there would be an attorney-client relationship? Under California law, if they offered advice, there would be under California law. I would just like to point out that that's not the facts that we have here because we have the additional situation of I'm sending the materials. There's a back-and-forth request for additional materials plus the sitting on it for three months. That makes this very different from- Plus the last-second notice. Plus the last-second notice, and those facts make this very different from the worry that I think is behind Your Honor's question, which is we don't want to have veterans have a harder time getting attorneys because people will be afraid to even talk to them because if I send you my materials, I'm automatically your attorney. That's not what happened here, and the only way you would fall into that under California law is if you also provided legal advice. I don't agree with you. I don't think that's what California says. I don't think that providing the advice when you decline to represent somebody and saying you don't have a meritorious case creates an attorney-client relationship. I think you have to find that at the outset that there was an agreement to evaluate the case, and I think that the record here may support the idea that in the beginning there was an agreement to evaluate the case. If you look at the Board's opinion at A-9, the Board does find that the appellant does not state that she took any action during the 120-day period to confirm that an attorney was required to file an appeal or that an appeal had been filed with the court. So they are taxing her for failing to check to see whether an appeal had been filed. Your Honor, that is correct. In this section, they do talk about some facts about what occurred during the 120 days, but there's no finding that that shows a lack of diligence. The lack of diligence is in the preceding two sentences right below where you're at, and read from it. All of that is focused on the post-miss deadline activity, and under this Court's checkup decision, that is the incorrect period of time to be analyzing diligence under. I will say the rest of my time for about a week. Thank you. No further questions. Ms. Gerber. Good morning. Yes, good morning, Your Honors. May it please the Court, the Veterans Court applied the correct standard of equitable tolling here and also applied the correct California law. You don't even mention Perkins and its progeny. Why not? I mean, that's raised in the blue brief. The state of California law looks to whether there is either an express or an implied contract. It looks at the totality of the circumstances. Now, Perkins certainly applies if that is one of the factors. If there's a request for advice and that advice is received, that is part of where one might look to find an implied contract that would create an attorney-client relationship. I think Judge Dyke summarized the current state of California law. Let me read from Martin V. D. Wade from 2009. Are you familiar with that case? I don't have it with me, Your Honor. What is dispositive is whether the attorney provided the client, I'm putting in some names, with legal advice, and it says the fact that the attorney never prepared a retainer agreement, never billed the client, does not preclude the possibility that the person was a former client of the attorney. And what they're looking to is the reasonable belief that there's a formation of that relationship. I don't dispute that that's the correct statement of California law, but the Veterans Court applied that law and looked to whether there was evidence, not just to whether there was a retainer agreement, not just to whether there was an express contract, but looked at the totality of the circumstances and said at most, made a factual finding here, at most the evidence shows that Ms. Eagle agreed to have the appellant send her case materials and consider whether to represent her. That does not- And gulled her or lulled her into a circumstance under which she reasonably believed, given that she was communicating back and forth, that she had that relationship. The California courts are very solicitous of the circumstance of clients in those situations. And if there were evidence on the record that the Veterans Court found, factual findings that there was, in fact, a back and forth, counsel referred to a request for more materials. I'm not aware of any evidence on the record that Ms. Eagle ever requested materials. Again, the factual finding by the Veterans Court is that at most, Ms. Eagle agreed to receive this. The problem is, if we just back up a little in terms of reality. So if we assume there's arguably an attorney-client relationship here, does the question really come down to, and this is all pre-August 2, who had the burden under the circumstances to ascertain what was going on? Was it, did she need to follow up because there was some uncertainty in terms of where this case was going and what the status was? Did she need to follow up before the deadline? Or did Ms. Eagle, was it incumbent upon Ms. Eagle to advise her, at least just as a matter of courtesy, to give her more than what she thought was two days to then turn around, get notice that she's not going to represent her, and then run around and try to find another lawyer or do whatever she needed to do? So the question is, who had the burden? Well, the question in the context of equitable tolling is not just whether there's an extraordinary circumstance of attorney abandonment, but also due diligence, and that raises the issue of burden here, of who was responsible for filing that notice of appeal. There's no question here but that Eagle was negligent, and there may be a malpractice action that Ms. Snead could bring against Ms. Eagle, but obviously under the cases attorney negligence is not enough to result in equitable tolling. That's correct, Your Honor. The question here is whether Ms. Snead could rely on the fact that she was being taken care of during the period that Ms. Eagle had the case. Well, the Veterans Court found that Ms. Snead was not diligent during that 120-day period, not simply after she received the letter, but her responsibility to make sure the notice of appeal was filed, Ms. Snead's responsibility, was given, was made clear by the Board of Veterans' Appeals. Where do we find it in the Board of Veterans' Appeals, not so much in the Veterans Court? Both, Your Honor. Where do we find it in the board decision? The Board of Veterans' Appeals, JA-27. This is the part of the decision, after the decision in the Board of Veterans' Appeals, it also sends your rights to appeal our decision, and about halfway down the page it says, you should know that even if you have a representative, as discussed below, and then in italics, it is your responsibility to make sure that your appeal is filed to the court on time, and then it says if there are any questions about how to appeal, it says send your notice here. Where did the board find that she wasn't diligent? The board did not, excuse me, if I said that the board found that there was no diligence, I misspoke. The Veterans Court is the one that made a finding on diligence. Where is the finding of diligence with respect to what she should have done during the period when Ms. Eagle had the case? So on JA-9, the Veterans Court, that full paragraph in the middle of the page is a discussion about diligence. It starts saying the appellant has not diligently pursued her appeal rights and does not restrict its analysis to that 29-day delay, but in fact discusses the whole period, discusses during the 120-day period, there was contact with the attorney and sending the attorney, but there was no action during the 120-day period to confirm that the attorney was required to file the appeal or that an appeal had been filed with this court. That's a finding by the Veterans Court. No, but see, this is, I think, as I read that, I was a little confused because when you get to the end of that paragraph, they say although the letter incorrectly stated blah, blah, blah, excuse two days of the 29-day delay, the appellant's actions during the next 26 days do not show diligence. So there's a difference. I think Judge Dyke is asking you about the diligence in the pre-period. Right, and that's the earlier sentences in that paragraph. The paragraph analyzes the 120-day period, then that says, well, the two-day period, the August 3rd to August 5th, that would be excused because she had a representation from Ms. Eagle, an incorrect representation that it wasn't due until August 5th, and then August 5th to September 1st, it also analyzes. It's not simply looking at those 26 days or the 29 days, but in fact the 149 days that Ms. Snead had the responsibility to file the notice of appeal. Assume that Judge Dyke is correct and that Ms. Eagle committed malpractice in her dealings with her client. Okay, Your Honor. Under those circumstances, is the court in error in its initial analysis such that we need to let them look at it again if we reverse them on that? No, Your Honor. The Veterans Court looked at attorney abandonment and whether there was an attorney-client relationship, but if the court disagrees with that, the Veterans Court did not look at this as, well, you have to meet this specific formula. You have to have attorney abandonment or else there's no equitable tolling. It made a more broad statement as well in terms of whether there was an extraordinary circumstance regardless of whether there was an attorney-client relationship, and that's on page JA8. The Veterans Court has just discussed that there was no attorney-client relationship and then goes on to say, furthermore, Ms. Eagle's conduct does not constitute the type of conduct that it supports extraordinary circumstances, both the attorney-client relationship issue but also no evidence that Ms. Eagle provided the appellant with any incorrect or misleading information other than that. Well, they say, furthermore, her conduct in notifying the appellant the day before. Yes, yes. That's very limited. But it is looking at Ms. Eagle's conduct, and that's the only conduct that we really have on the record from Ms. Eagle, that she received these documents and then didn't contact her and didn't contact Ms. Snead until that day before. That's the conduct that Ms. Eagle made, and that could be the basis of an extraordinary circumstance. Well, the other conduct is, I'm doing an air quote, committing malpractice or, alternatively, sitting on the case. That's conduct. The Veterans Court was looking at... You're nodding yes. You have to say, if you're agreeing, you have to say. My nodding was I think I understand what Your Honor is asking. That the Veterans Court looked at Ms. Eagle's conduct, that conduct is that she only did this one thing. Maybe she should have done something else as well. But the Veterans Court was not required to make a finding about whether there was malpractice, to determine whether this was the type of egregious behavior that would constitute an extraordinary circumstance for equitable tolling. The reasons for equitable tolling are different from determining under California law whether there was malpractice. That would be something that would be appropriate to bring before the California bar, but not something that the Veterans Court had to make a finding on because it could make a broader discussion of whether this is an extraordinary circumstance, whether this is egregious. If we disagree with you on the first part, then on this, do we need, how does CECO apply here in terms of the stopwatch, whatever it is you call it? Yes, stop clock approach, Your Honor. Our position is that CECO applies only when there is a very specific start and stop. There has to be a time to start the stop clock and time to stop it. Ms. Snead has made clear at this point that the time period, which she believes is that period, some undefined time period at which there was some attorney-client relationship created, and then the end of that time period is the August 2nd receipt of that letter. Because there's no start, we would say CECO doesn't apply. But even if it did, the Veterans Court has already made a finding with diligence with respect to the entire period. It's discussed diligence throughout that, whatever the start date to the end of the 120-day period. So it wouldn't be necessary to remand for the Veterans Court to say, again, well, now not looking at the entire period, but the shorter period, there's still no diligence because we've already discussed diligence. Well, they didn't consider, though, whether any portion, assuming they found went the other way on the pre-August 2nd time, they haven't discussed what period, therefore, of the stop would be applicable. But the Veterans Court did state that Ms. Snead made no efforts within the entire 128-day period. There's no evidence. No, but I'm suggesting hypothetically that we don't buy that and we think the diligence or the error was exclusively on the attorney and not on the client so that we can't tag her with the absence of due diligence in the pre-August 2nd period. So then we're just looking. We're left with, okay, was there diligence then after that? And Checco would seem to suggest that maybe she gets some period of time. Do you understand what I'm saying? I think so. Let's assume your argument with respect to everything that happened pre-August 2nd is rejected. And therefore, are we left with an argument? Does the government still say that even if that's true, even if she didn't act diligently after August 2nd because she took 29 days and she should have acted more diligently under the circumstances? And Checco might suggest, at least I think your friend would argue, that Checco suggests that there ought to be some proportion of the 120 days ought to inure to her after August 2nd. Right. So when Checco does apply, if there was a 30-day period and the Herrick case before the Veterans Court, which is cited by Ms. Sneed in the reply brief, is a good example of this. If there was a time at which she believed someone was filing her notice of appeal for her Ms. Eagle represents me, and if that was a reasonable belief, we disagree with that. But if there was a specific time to start it and a specific time when she learned that Ms. Eagle was not going to be filed. Oh, we have the end time. We have the end date. That's the August 2nd. Then that just sort of shifts whenever the date would be. That's correct. And then the filing deadline would be, say it's a period of 60 days, it would be 60 days later. That's correct. So then she would have been within the time. If it were 60 days, it's unclear again. And our position then is that Ms. Sneed had the opportunity to present evidence before on remand and did not present any evidence about when she could have reasonably believed that Ms. Eagle was representing her and that Ms. Eagle was supposed to be filing the notice of appeal. There was, under the Supreme Court's recent case in Menominee Tribes, the court makes very clear that there has to be both the extraordinary circumstance and due diligence during that period. So the due diligence from prior to the August 3rd deadline, that period you'd have to look, not just at whether there was an extraordinary circumstance of what the attorney was doing, but also Ms. Sneed still had responsibilities to be acting diligently herself, and that is what the Veterans Court found was lacking there. Well, maybe also there's a question of whether there's an extraordinary circumstance because what the Supreme Court is talking about in Maples is a situation where someone has undertaken to represent somebody and defaults in the performance of that obligation, whereas here, even if there's an attorney-client relationship, the lawyer hasn't agreed to the representation but is still investigating it, and the question is whether that constitutes an extraordinary circumstance. Yes, Your Honor, and it is certainly worth noting that in the cases in which courts have found that there was an extraordinary circumstance from attorney abandonment, there is evidence of the client repeatedly asking the attorney to do something, reaching out to the court asking for the attorney to be removed, trying to get this notice of appeal filed or whatever needed to be filed to be filed, and there's no evidence of that here, and so that would suggest that with respect to what was outside of Ms. Sneed's control, she would have had to show that she believed that this notice of appeal had been filed, that she was told that it was filed. Again, that's like the Parrott case where the Veterans Service Organization said, oh, yes, we've got this under control, we're taking care of it for you, and that was enough to rely on that. I see my time is up, and therefore we respectfully request that the... I just want to say, Ms. Gerber, that I attribute to your youth, and it saddens me that you don't know the word monomany because if you were my age, you would have subscribed to the nominee Falls Guardian, which published only every comic strip that had been published in the United States for the last month, once a month, and I read it religiously all through law school. I'm going to have to look that up, Your Honor. Thank you. Thank you. I just would like to make a couple of brief points. First, there's a discussion of Checo by my friend, and I would just like to point out that for the first time I heard sitting here today that Checo only applies when you have a definitive beginning and end date. First, that's nowhere in their brief. In their brief, they say, 27 to 28 of their brief, they say that Checo doesn't apply here because there's no definitive end date, and that's actually the holding of Checo. They quote from it, has a definitive end date for equitable tolling. That may be true, although my recollection of Checo is it relied on a Second Circuit case, and it only did what it had to do in the Checo case, but I think the case on which it relied on in the Second Circuit had a beginning and end date, but that's just my recollection. And secondly, just on the point of diligence of Ms. Snead, if you go and look at the entire eight-year period of time that she was advancing, trying to get this death benefits, this is the first deadline that she missed. Eight days after she got the board's decision, she reached out and called an attorney. She then had several additional communications with that, and when she got the letter on the 2nd, she went and called 14 different attorneys in the span of a couple of weeks to find out what she needed to do to get it filed because she didn't understand that this, while she understood that she was told you could file this yourself, she had no concept of what type of document this is. She didn't know that it just needed to be one sentence. But ultimately, she did it right, right? I mean, then all else failed, I guess, and she also managed to get it done pretty easily, right? Ultimately, she called the Veterans Court, and they, for the first time, explained to her this is just a one-sentence thing that says I disagree and I want to appeal. Didn't Ms. Eagle tell her something of this sort too? No, she gave her the exact same information that's contained on the document from the board that they referred to, which is you can file this yourself. No one, until she called the Veterans Court, had ever said to her this is essentially a non-substantive document. It's just a one-sentence thing that says I appeal. And as soon as she found out that information, she filed it. For these reasons, we respectfully request that you vacate and remand the Veterans Court's decision. Thank you. We thank both counsel. The case is submitted.